IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AGORA CYBER CHARTER SCHOOL | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-2917 |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF EDUCATION, et al. | : | |

---

| | | |
|---|---|---|
| THE CYNWYD GROUP, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-2963 |
| | : | |
| K12 PENNSYLVANIA LLC, et al. | : | |

**EXPLANATION AND ORDER**[1]

This matter arises out of a dispute between Agora Cyber Charter School ("Agora"), the Pennsylvania Department of Education ("PDE") and Agora's former counsel, Lamb Mc Erlane, P.C. ("Lamb" or "the firm"), over Lamb's invoice no. 95303 pertaining to their billing for October 2009. As the parties have set out in their settlement agreement, this Court to resolve their dispute.

Agora and PDE have challenged the invoice on several grounds. First, they claim that the firm spent excessive time and involved more lawyers than necessary in their preparation for the revocation hearing. Secondly, they claim that with limited exception, Lamb was no longer representing Agora after the Board of Trustees meeting of October 13, 2009, where the original board resigned, a new board was selected and sworn in, and new legal counsel, Michael Twersky, Esquire, was appointed. The invoice in question is for the sum of $80,097.95.

---

[1] As we write only for the parties, we dispense with a detailed review of background facts and procedural history - other than to refer to what we believe is necessary to set out our reasoning.

1

I.     **LEGAL STANDARD**

The party seeking the payment of fees has the burden of establishing the reasonableness of its request. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). In order to meet this burden, that party must "submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424 (1983). We must then "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant or otherwise unnecessary." *Loughner v. University of Pittsburgh*, 260 F.3d 173 (3d Cir. 2001) (citing *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179 (3d Cir. 1995)). Once this has been done, the responding party will then have the burden of challenging the reasonableness of the fee.

The reasonableness of the fee requested in this case is dependent on the following factors that the Pennsylvania Supreme Court has determined to be relevant:

> the amount and character of the services rendered; the labor, time and trouble involved; the character and importance of the litigation; the amount of money or value of property affected; the professional skill an experience called for; the standing of the attorney in his profession; and the pecuniary benefit derived from the success.

*Nationwide Energy Corporation v. Kleiser*, 1987 WL 10655 at *3 (citing *in re Huffman's Estate*, 349 Pa. 59 at 64 (1944)). We review the evidence with respect to invoice no. 95303 against this standard.

II.    **DISCUSSION**

A.    **Preparation for Revocation Hearing**

Agora and PDE assert that Lamb spent substantially more time between October 1, 2009 and the October 9 date, when it became apparent that the case was going to settle, than would be

necessary to properly prepare for the scheduled revocation hearing. In correspondence from current Board President Travis Gery dated March 2, 2010 (p. 2), Agora asserts that the acknowledged need for preparation "scarcely" provides an explanation for "the services of five attorneys billing a total of 162.25 hours of work in thirteen days," given his understanding that at the reconvened hearing, "PDE was scheduled to complete direct examination of its first witness who would thereafter be subject to cross-examination." *Id.* Mr. Gery then questions why the Lamb firm would spend time "preparing witnesses that could not be called until the completion of PDE's case." *Id.* Implicit in the position of Mr. Gery, is that the Lamb lawyers should have prepared only for the one witness whose direct examination had not been completed as of the expected commencement of the hearing on October 13. Mr. Frank, on behalf of Lamb, takes vigorous exception to this assertion and writes in his correspondence to the Court of March 5, 2010 that, in fact, "seven consecutive business days" of further hearing were scheduled, which would have included the dates from October 13 through 16, 19 through 21, as well as two further dates in late October. (*See* Frank March 5, 2010 letter, p. 1.)

Neither Agora nor PDE has challenged Mr. Frank's basic assertion that there were seven consecutive business days scheduled for the hearing, commencing on October 13, and that testimony was expected from as many as seven separate PDE witnesses, about whom the Lamb firm had received only a single sentence describing, in the most limited way, the substance of the testimony of those proposed witnesses. (*Id.* At 1-2.) We also note that the September 8, 2009 e-mail from Ms. Nagle, as trial counsel for PDE, to Mr. Frank and his colleagues confirms the accuracy of Mr. Frank's assertion about the number of PDE witnesses and the sparse, indeed single sentence descriptions of their proposed trial testimony.

3

Certainly, we would not expect that these seven consecutive days of hearing testimony would consist of only the completion of the direct examination and cross-examination of the first witness, as suggested by Mr. Gery. We seriously question whether Agora Board sitting at the time would have been pleased if Lamb had, in fact, limited its preparation to dealing with this single witness.[2]

We also note Mr. Frank's representation in his February 25, 2010 letter that:

> Mr. Cunningham and Mr. Withers...were in full hearing preparation mode due to PDE's refusal and failure to agree to postpone the hearings while the parties were determining whether a settlement could in fact be accomplished. Indeed, it was due to PDE's insistence that the then scheduled hearing days take place exactly when scheduled until a Settlement Agreement was signed by all parties that directly caused the vast majority of this term to be incurred that "Agora" now disputes.

Mr. Gery's letter of March 2, 2010 does not refute this representation. It is also the Court's recollection of the events surrounding this issue that PDE was resistant to the suggestion not only of the Lamb firm, but also of the Court, that the parties consider an agreed adjournment of the renewal of the hearing and that, in fact, this suggestion was rejected by PDE's chief counsel.

We conclude that there was no reasonable alternative for the Lamb firm in the proper representation of its client to do anything other than to undertake its best efforts, time-consuming as they may have been, to prepare for the hearing, at least up until the point on October 9, 2010 when it appeared the case was highly likely to be settled and Mr. Frank promptly advised his colleagues to suspend that part of their work relating to preparation for the hearing. *(See* Frank email of October

---

[2] It has not gone unnoticed that the position of Agora has been put forth by the current Board President who was not even on the board at the time the work was done. Neither Agora nor PDE have made any suggestion that any member of the Agora Board functioning at the time of this work had raised any objection to the Lamb's handling of the matter.

9, 2009.) We are left, under these circumstances, to conclude that the time spent by the Lamb attorneys subject to certain limitations set out within, was appropriately spent and the proper subject of payment by Agora.

**B. The October 13th Board Meeting**

As part of the settlement agreement, the entire Board that was in place up to October 13, 2009 was to resign and a new Board, agreeable to PDE and willing to work with K12 was to be installed. The record reflects that Attorney Frank attended the first part of the meeting where these events took place, where he outlined the critical terms of the settlement agreement and secured all acknowledgments and approvals from the then-current Board as required by the agreement. (*See* Agora's 3/2/10 letter, App.B.)

We note that the initial objection raised to the Lamb bill, in the form of a letter from Kathleen Nagle of Vaira & Reilly, who was to act as trial counsel for PDE at the revocation hearing, states that the Lamb firm's "legal representation of the school ended on October 13, 2009." The March 2, 2010 letter from Agora Board President, Mr. Gery, however, acknowledges that the new Agora Board approved additional billing for Mr. Withers of the Lamb firm in connection with work associated with Agora's federal implementation grant. It appears, then, that Ms. Nagle was mistaken concerning the new Agora Board's relationship with the Lamb firm.

While the new Agora Board may have authorized only work to be done by Mr. Withers, Mr. Frank appeared before this Court on October 19, 2009, after we had learned through the parties that the carefully crafted settlement agreement was in danger of unraveling. The Court made the judgment that, to the extent possible, it would be best to have all counsel who participated in putting the agreement together to appear before me on that date in order to prevent any unraveling from

occurring. I would have certainly expected that Mr. Frank, who had been so involved in the settlement discussions on behalf of Agora prior to October 13, would have been among the lawyers to be assembled for that purpose. I would also have thought that it would have been quite important for the new Agora Board, K12 and PDE to make sure that the settlement would be confirmed. We will approve the time associated with Mr. Frank's attendance at that conference. We will not, however, approve any portion of the October 19 billing that Mr. Frank sets out as being associated with the discussion of the federal implementation grant at the offices of Vaira & Reilly. Mr. Frank bills 8.5 hours for that day, and we will strike 3 hours of his time. *See Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983) (the court may strike specific hours and "necessarily has discretion in making this equitable judgment").

### C. Miscellaneous

We note that the 95303 invoice contains 14.5 hours for William Lamb. 8.75 of these hours were between October 1 and October 9 when the basic settlement terms were agreed to. We understand Mr. Lamb to be a former justice of the Pennsylvania Supreme Court and the most senior partner in the law firm. We also note that Mr. Lamb was referred to in the May 5, 2009 letter confirming the engagement of the Lamb firm in connection with a matter then pending in the Commonwealth Court. While that the relationship between the matter of this retention letter and the federal court litigation is not as clear as it might be, it is apparent that the lawyers and Agora generally agreed that the Lamb firm would be representing of Agora in connection with the full range of disputes associated with the status of its charter and that Mr. Lamb would be involved.

We do not question that Mr. Lamb would have added significant value to the representation of Agora, particularly with respect to any appellate matters that were potentially involved with this

representation. What we are less clear about is the specific role of Mr. Lamb both in the preparation for this hearing and in activity following the October 9 date. While this has not been commented upon by the parties, we observe that the October invoice contains little useful information about Mr. Lamb's role as the 12 entries bearing his initials are quite spare. ("Review various e-mails; telephone calls"; "Various updated – J. Frank;" "Various – settlement;" "Various e-mails – settlement – conference calls;" "Numerous e-mails – settlement issues", etc.). While we are prepared to accept certain involvement on the part of Mr. Lamb, we do not accept that the nature of the work involved and the lack of precision with respect to the billing justify 14.5 hours. We will, acting within our discretion, reduce the billing for Mr. Lamb by 7.0 hours.

**D. Conclusion**

For the reasons indicated, we approve the Lamb invoice 95303 pertaining to the billing for October 2009 reduced only by 3.0 hours spent on October 19, 2009 by Mr. Frank and 7.0 of the 14.5 hours charged by Mr. Lamb. Accordingly, we conclude that invoice 95303 in the amount of $80,097.95 is reduced by $5,370.00,[3] is payable to the extent of $74,727.95 which we determine by reducing the $80,097.95 sum by $5,370.00, payable to the Firm by Agora and PDE.[4]

---

[3] 3.0 Frank hours at $425/hour or $1,275.00 plus 7.0 Lamb hours at $585/hour or $4,095.00, for a total of $5,370.00.

[4] While we not that Lamb belatedly suggest that it is entitled to payment for its time spent in pursuing payment of this 2009 invoice, we decline to do so.

It is therefore, on this   6th   day of May, 2010, hereby **ORDERED** that Agora and PDE pay to the Lamb firm within the next thirty (30) days the sum of $74,727.95.

BY THE COURT:


/s/ David R. Strawbridge
David R. Strawbridge
United States Magistrate Judge